Electrolux Holdings against the United States. Mr. Friedman, whenever you're ready. Thank you, Your Honors. Pleased to report. I'm Steve Friedman, here with my co-counsel, Terry Harris, representing the plaintiffs' appellants Electrolux Holdings Inc. and Electrolux Home Products Inc. In December 1999, Electrolux filed a timely refund claim based on clear and unambiguous language of 6511 D-2A, the special limitations period of the tax credit. That 1999 filing related to a carryover for 1995, which was based on a capital loss in 1994, which had first been carried back, pursuant to 1212 of the code, to 91, 92, and 93. Electrolux originally filed its 1994 return. It had a large capital loss. However, at the time, it believed it could only take a portion of that loss under what was then called the loss disallowance rule. Accordingly, it offset some of that loss against its 1994 return. Pursuant to the statutory mechanism in section 1212, it was also allowed to carry back the remaining portion of the loss that was not used in the 1994 tax year, first to 1991, three years preceding. It had some capital gain in 1991 at which it offset against that loss. It was then, after going to 1991, entitled to carry back the remaining portion of the loss to 1992. It had no gain in 1992 offset. Accordingly, pursuant to the statutory machinery, it was entitled to carry back the remaining portion of the loss to 1993, and it had some capital gain in 1993. Actually, it had enough at the time to use the remaining portion of the loss. The 1994 tax year was then audited by the government. Under that audit, there was an extension agreed to between the taxpayer, Electrolux, and the government, which kept the statute period open for 1994 until 1999, and in 1999, to file a deficiency claim by the government June of 2000 for Electrolux to file a refund claim. In December of 1999, Electrolux decided that it incorrectly limited itself in its original 1994 filing because the loss disallowance rule was not proper, and therefore Electrolux was entitled to $45 million in additional loss. It had incurred in 1994, but had not declared before, and it decided to therefore file refund claims for the years in which it could offset that loss against capital gain. Accordingly, in December of 1999, Electrolux filed refund claims for 1993, 1995, 1996, 1997, 1998, using up the entire gain. The government allowed the deductions for the carryback year of 1993 and the carryforward years of 1996, 1997, and 1998, but did not allow a portion of the 1995 carryforward, claiming that it was not timely under the normal statute of limitations, which was three years, and the 1995 three-year statute of limitations concluded in September of 1999, a few months before the refund claim was filed. Mr. Friedman, where is the lower court in error in its determination of attributable to such carryback? Why is it wrong to define it the way it was defined below? The lower court is incorrect in its narrow interpretation of the term attributable to, because as the court in First Chicago held, the term attributable to is a broad use of the phrase, which not only applies to the carryback, but to any carryforward that can be traced to the carryback or is affected by the carryback. How is it affected by the carryback? Let's assume for the moment that you had $50 million in capital losses in 94. 91, 92, and 93, you had capital gains that could be offset the entire amount. So at that point, you would not have any. Correct. Now, take the opposite result. You have $50 million in capital losses in 94, no capital gains in 91, 92, and 93. So all you could do is carry it forward. You still carry it back. Would you carry it back even though you don't have any offsetting capital gains at that point? So you're saying that the method of calculation would be to make a determination that you carry it back for three years, not finding a capital gains during that three-year time period that you carry forward the carryback. So it changes definition to a carryback at that point? No, it's still a carry forward, but under the statutory machinery of 1212, a capital loss must first be carried back. The taxpayer has the burden of showing that it first carries back the capital loss. The fact that the capital loss is carried back and it doesn't affect your taxes because there's no capital gain, that's still a very real effect. It has to go through that mechanical process. It has to be on those returns, I take it. You have to show that. You have to trace through. So even though you're bookkeeping, well, it's an accounting form. The accounting form has to be traced through. Correct. For accounting purposes. But the government, courts have held that it is the taxpayer's burden to prove, to show. You can't just say I got carried forward without showing the government that you were unable to use those carrybacks or the effects of those carrybacks. Let me just ask you a quick question because I think I may have, I probably said something that at least is a misapprehension on my part, maybe it's wrong. Are you actually required to file an amended return simply to show that there were, this carryback is, no. You're not required. You're just representing. It's a misapprehension. We did not, Lutkos did not file an amended return from 91 and 92 where it was not. So the carryback mathematical computation in order to get your carry forward is an accounting matter. It's not a tax matter. I mean, it's a tax matter. It's not a, it's not an IRS problem. It's an accounting problem. Well, it's an accounting matter, but I mean, it is, again, it is the burden on the taxpayer to show. Can you file that amended return? You've got to satisfy the commissioner that there weren't any losses that could have been offset. Exactly. I mean, we have the burden to show that there wasn't. I mean, no one came back and made a show us on paper, but it is the taxpayer's burden to show that, well, and this is an important point, a very important point, because so long as that 94 year was open, the government was free to go back to 91 and 92. The fact that Lutkos did not have, did not say, did not, that's what I'm saying, that there was additional gain in 91 for which it wanted to offset, did not preclude the government from re-looking at 91 and finding another gain. It did not in this case. It couldn't have done that. All of which, all of which doesn't make the overpayment attributable to the carryback, does it? Attributable to the carryback? Absolutely. Attributable to is, as Judge Whitaker said, traced to, affected by. It is something that you cannot know the existence or the amount of any of those carry-forwards under this statutory mechanism until you go through that process for the 91, 92, 93 carrybacks. What was the trial judge's response to the First Chicago's adoption of Judge Whitaker's position? The distinction sheet, the trial court in one line, frankly no reason, they intended to distinguish First Chicago by saying First Chicago involved a different tax mechanism that was the carry-forward as opposed to the same tax mechanism. What do you understand she meant by that? I understand she meant by that, that to her there was some difference in having a change in the 91 year that had something else generated. But I don't see where the statutory language requires something anew to be generated as opposed to this is the same tax mechanism which is this capital loss which we have to go through the process of 91, 92, 93 before we know that we have a 95 and then in fact with the amount of that 95 or 96, 97 on forward. You can't find that, you don't know that 95 until you go through this process because the statutory mechanism here requires it. It says it's mandatory, shall go back and do that. And also again the fact that you can be new gain or be put into the equation which has the effect of changing that 95 capital gain. And the example that we that I didn't talk about before of the reply brief, I mean in this case the change was to the year of the loss. But it didn't have to be, you can have a very similar factual scenario where the change is in one of the years of carryback. So instead of having additional loss discovered for 94 within the statutory limitations for 94, thus 93 being open by virtue of a carryback, we discovered that in fact there was less gain in 93 than originally reported. Well if there's less gain than originally reported, it's still open but the statute hasn't closed and it was a tax-free transaction that we originally thought was taxable. And so now we have less capital gain in 93 than originally reported. And when it had soaked up the entire capital loss on the original return, now once we have adjusted it, we see that it doesn't soak up the entire loss and we have a carryover. It comes anew now. Now there is a 95 carryover which was not originally reported because of this change in 93. Well it's a very odd circumstance if 93 is open to say that there's a change in this open carryback year of 93. Would 92 and 91 also be open? Yes, absolutely. All carryback years are open and the ripple effects thereof are open too. So long as the year of loss was open, which again appeared by extension the year the loss was open. You know there's some ironic situation where we have a year of loss open which is chronologically earlier than the year of carryover, which is how this arose. Mr. Friedman, if you were rewriting this statute in order to avoid this problem, what would you do? You'd just add more loss carryover. Or make Judge Whittaker's absolutely explicit. I'd say attributable to the carrybacks and their effects. Well the easier and less effects is already getting to murky ground. Whether attributable means affected or amount is affected by, there are a lot of things that can affect the attributable. Wouldn't you just, as Presiding Judge Bryson suggests, wouldn't you just add carry forward? No. You wouldn't. No I would not because there are capital losses in the code that can be carried forward and not carried back. Section 112 has such things and those are different. Those you don't have this effect of potential changes in the 91, 92, 93 carryback years that would affect the carry forward. You just have the year of the loss that affects it and therefore that is a different mechanism. I'm not saying that wouldn't be a bad thing either policy-wise but you don't need to go that far to get a result. Affected by the carryback is enough because the effects of a carryback that must go through before they carry forward is different than a capital loss that is only carried forward. So at a minimum you would change attributable to affected by. Yes, which is essentially what Judge Whittaker said the broad language was in his opinion in First Chicago. Of course that was, well that's fine. Let's see we're into your rebuttal time. Shall we save the rest of your rebuttal time? Very well. Mr. Carver we'll hear you. May I please report? Your Honor, Judge Brady correctly held that the resolution of this case begins and ends with the plain language of 6511 to D2A. Yeah but that's not the position the government took in First Chicago. I have the feeling that you all take a position to get money rather than to read the statute. What am I to make of this? Excuse me, I'll turn right to that case and that there is no inconsistency between our position here and the position in First Chicago. That statute in First Chicago was the parallel to this one. It gave the commissioner a special period of limitations in the case of a deficiency that was attributable to a lost carryback. Here we're talking about a overpayment that's attributable to a carryback but the difference in language is not significant here. I'm just putting it in context. What happened in First Chicago was the taxpayer had a loss in 1974. It carried that loss back to 71. That had the effect of reducing its tax liability for 71 which automatically reduced its income tax carry forward to 72 which is a minimum tax concept and that reduction caused a deficiency in 1972. So in First Chicago if there had never been a carryback there would have been no deficiency in 1972 and in that circumstance the Seventh Circuit agreed with Judge Whitaker that the deficiency was attributable to the carryback because there was direct cause and effect between the carryback from 1994 to 1993 and the overpayment in 1995. Had there been no carryback here the overpayment in 1995 would have been exactly the same. It was completely unaffected. It had nothing to do with the overpayment. The overpayment here was strictly a result of taking the loss in 1994 and carrying it forward to 1995. Well they didn't carry it forward in 1995. They had to carry it back for three years under the statute. Yes. So if they carry it back for three years and the carryback provisions require them to do it to cover the losses or offset the losses against the gains so it might be available in 91, 92 and 93. Isn't that really attributable to the carry forward at that point in time that the carryback is a really an attributable aspect to the carry forward? Your Honor I think we have to get back to the actual language of the statute which is not whether the carry forward somehow is affected by or attributable to a carryback. The question is is the overpayment attributable to the carryback? Was the fact that the taxpayer had overpaid its taxes for 95 resulted from the fact that it had to first carry its loss back to 1991, 1992, 1993 and the answer is no. That could also be true though for 96, 97 and 98. That's right but they don't need the special statute there. Their years were open under the general statute. So the specific statute required a three-year opening was only attributable to the 95 year, only related back to 95. No Your Honor. Now if you don't have that statute of limitations problem 95 would still be the same as 96, 97 and 98 wouldn't it? Your Honor their claim for 95 was untimely under the normal statute of limitations which is in 6511a which is three years from the time you file your return. They're out of time there but for the years 96, 97 and 98 they were not out of time under the general rule so they don't need this special rule. That's why the claims were allowed for 96, 97 and 98 not because the government in any way conceded that those overpayments were attributable to a loss carryback it was that they were under the general rule which is just you have three years from the time your return was filed to file your claim for refund. But wouldn't those losses really be attributable to the carryback? No because if let's assume that 1994 was the taxpayer's first year of business and it had the exact same loss it had. It had this capital loss. You would have no prior years to carry it back you could only carry it forward. Their overpayments for 1995 have been exactly the same so there's no cause and effect between the fact that under the law they first had to carry it back before they could carry it forward. The overpayment was unaffected even and the statute says attributable which has a well-established meaning. Well the overpayment it depends on what you understand the overpayment to be. If the overpayment is the accounting calculation of the amount that can be taken against any capital gains in the 1995 year then that amount the exact amount is indeed attributable in part at least to the carrybacks. If the overpayment means the concept of the fact that they had an overpayment that concept is certainly not attributable to the which is it? Are we dealing with an accounting problem or are we dealing with some this legal concept of an overpayment? Overpayment has a well-established meaning is that the taxpayer has paid more money than the tax that's imposed by the code that's why there's an overpayment. You've paid more than you owe so the question is is the fact that you that you now... You're saying the statute's use of the word overpayment doesn't address the amount of the overpayment it only addresses the fact that there is an overpayment. That's right and the question is is the fact that you have an overpayment here we're talking about 1995 is the fact that you overpaid your taxes for 1995 a result of the fact that you had to carry your loss back to 1993 before you carried it back to before you could carry what was left in 1995 and the answer is no. If you had not carried it back you would have had the exact same overpayment. There's in this case there's no cause and effect between the fact that they had to carry their loss back first see what's left and then carry the remainder forward. It's the same amount in either case. Now my opponent would construe the statute as if you've got a special statute of limitations in the event that the amount of an overpayment may be affected by a carryback. Well if that's what the statute said then it wouldn't be here. In any given case the amount of an overpayment may be affected by a carryback in the sense that the loss may be used up entirely or partially by the carryback years and so the amount may be affected in a given case by the carryback part but but if the statute doesn't say that it says is the overpayment attributable to a carryback and in fact even if you had the language uh was the carry was the overpayment affected by the carryback and the answer here is no it wasn't even effective it didn't reduce it from what it would have been otherwise. If you had to rewrite the statute to solve their problem what would you do? In their favor. In their favor. Oh I would say in in any case that that an overpayment is attributable to a a carryback or carry forward you get a special statute of limitations. And I suppose you could specify that subclass of carry forwards that required a carry back first simply by saying uh except or including only the following exceptions. The general rule is that for corporations uh they're we're talking about a capital loss uh here but they're required to carry it back so under their rule but you know the general would be every carry forward is attributable to a carryback because you have to carry it you know every one factor but the statute doesn't say that it's going to give you extra time if your over payment is attributable to a carryback. Was your overpayment caused by the carryback? And the answer here is no it wasn't caused by it had no effect on it and and I would I would distinguish uh not only from First Chicago where as I pointed out in the absence of carryback there would not have been a deficiency so there was a direct cause and effect but the other case that my opponent relies on the district court case in in Marshalltown also there was direct cause and effect and that was the same statute we're talking about here in that case they had a loss in in 85 they carried it back to 79 which which eliminated all their tax for that year and freed up investment credits which they then carried forward to 1980 creating an overpayment in 1980 so in that case once again if there had been no carryback there would have been no overpayment for 1980 so in that case the overpayment in 1980 was attributable to the carryback it was an automatic effect that but for the carryback there would have been no overpayment now if you apply that saying but for a test here but for the carryback would they have had an overpayment for 1995 the answer is yes they would have had the same overpayment it had no effect it did not cause the the the overpayment the overpayment was the result of they had a loss of 94 after carrying it back they hadn't used up all the loss so they still had quite a bit left and now they are allowed to carry it forward and that carrying it forward produced the overpayment to carry it back and nothing your notion of an overpayment has nothing to do with the amount of the overpayment it's the existence of an well there's an existence of the overpayment that's caught that has to be caused by a carryback you have to have a causal connection between the fact that you overpaid your taxes for the year issue and the fact that you that there was a carryback now the most obvious example is their taxable year 1993 they had a loss in in in 1994 they carried it back to 1993 that produced an overpayment for for 1993 so so that overpayment was attributable to the carryback that was the direct effect of the carryback but when you went but when you turn around and look at 95 there's no causal connection if there had been no carryback they would have the same overpayment that they had so there's no connection between the two so no matter how you twist the words you cannot say that the reason they overpaid their taxes for 95 was because they had to carry back the losses to 1991 92 92 93 no the reason was they had a loss of 94 they didn't use up all the loss in these early years so they still have that loss and they are allowed to carry the loss forward so that so that the overpayment 95 is attributable to the loss that occurred in 1994 not not to the fact that there was a prior carryback but the 95 overpayment was attributable only to the loss in 94 yes because they paid their regular taxes in 95 without consideration of the loss in 94 isn't that correct yes now they had to go back and really re-establish the amount of the carry forward by going through the carryback years so like why would the amount of overpayment made in 95 then be attributable to the carryback provisions and not just the capital loss incurred in 94 because it had no effect on the amount of their overpayment they had the law required them to carry it back and why would excuse me why would it have an effect on their overpayment they overpaid their taxes because of the fact of the loss in 94 but the loss in 94 couldn't be taken until they carry it back to 93 92 and 91 yes and then carried forward if there was any coverage yes so the point is that the fact that they had to carry it back meant that it was possible that the loss they otherwise the overpayment they otherwise would have had in 95 had they been permitted to carry directly for could have been reduced or eliminated if they had enough capital gains in the year 1991 92 93 there might not have been any carried forward so that could have had the effect of eliminating their overpayment but it wasn't going to it wasn't going to generate an overpayment it wasn't going to increase an overpayment it can only reduce it but in fact in this case it did it didn't either because they had so much capital loss that even after applying the gains they had in earlier years they were left with a large chunk of the 94 loss which they then were allowed to carry forward having previously applied the loss to to the capital gains they had in the carryback years so so now they have this loss for 94 they've gone through the steps of using up what they had to so so now they have this large loss in 94 which they carry forward the overpayment is attributable to that the carryback could have only eliminated or reduced it it didn't do either here but it certainly couldn't have caused it it couldn't have generated and it didn't so in no sense can they say that but for the carryback we would not have had the overpayment no they wouldn't have the overpayment even if there was no requirement to carry back it would have been exactly the same it didn't even affect the amount okay well any other questions very well thank you mr freedman uh thank you two and a half minutes it is not correct to say that there's no effect of the carryback the carryback has to occur and it does occur and you can't tell about the 95 overpayments with the capital gain i don't i don't think the government's saying there's no effect mr freedman i think what they're saying is that the carryback could have the effect of eliminating the overpayment in 95 but it couldn't have the effect of creating the overpayment and two points on that the first as we said in the brief i mean linguistically i don't see the difference between failing to preclude something and creating something new the fact that the 93 91 92 or 93 carrybacks have the ability to preclude or not preclude and have to occur before the 95 carryover occurs i see why it's not causing due to generating but more importantly again you know the fact scenario here i mean we have both 94 as the initial cause and then the but when we do the fact scenario with a 93 year there's a change in the year of the carryback you can see the overpayment coming in i mean it's not a hard vision that the 93 say find additional capital gain in 93 there's too much capital gains in 93 such that it didn't originally have any carry through you had originally soaked up the entire carryback there's a lot of logic to your position the question i have to wrestle with is whether the statute unlike most of the internal revenue code is intended to incorporate that logic isn't it and the best evidence of that is judge whitaker's opinion judge whitaker's opinion in first chicago clearly stating that the purpose of this language broad language relating to an overpayment attributable to a carryback was intended to include not just carrybacks but carryovers he says that in clear language where the carryover can be traced to not the initial calls but traced to the carryback doesn't have to be first chicago is no different it's a mechanical application of the code carryback so the capital loss occurs 74 carried back to 71 mechanically causes a carry forward happens to be a year that's also carried back here but that don't think that's relevant that it's 72 not 75 in the case no one's made that argument that mechanical application of the code we say a carry forward that was the alternative minimum tax all right different tax mechanism the alternative tax in first chicago as opposed to the loss that the carry of the initial loss capital loss in this case um but again mechanically occurs in the judgment you said you know it affects it it's traced through it therefore one quick point one interesting question was the government having its cake and eating it too and you know again another point made in our footnote four i mean imagine the scenario here where instead of having additional capital loss in 94 in the open year imagine that 94 had initially taken a certain amount of loss carried it back by the 1993 carried a portion over to 1995 and offset that against capital gain in 1995 reducing the tax in 1995 if during the audit prior to the conclusion of 1999 the government had determined that too much loss was taken in 94 and had reduced it reduced it such that there would be no carrier carrier was improper but 95 had closed i think the government in that case would have a very different view of the statutory language and whether or not it would be allowed to say that that carry forward is attributable to the carryback and thus open for the government to retrieve an inefficiency claim okay thank you thank you very much thank you both counsel